Kevin M. **WENZEL**, et al., Plaintiffs,

v.

**SAND CANYON CORPORATION,**
et al., Defendants.

Civil Action No. 11–30211–JCB.

United States District Court,
D. Massachusetts.

Jan. 5, 2012.

Andreas A. Kralios, The Law Office of Andy Kralios, William J. Brown, Jr., Springfield, MA, for Plaintiffs.

Dudley C. Goar, Concord, MA, Jennifer S. Bunce, Maura K. McKelvey, Paula-Lee Chambers, Boston, MA, Paul S. Weinberg, Weinberg & Garber, P.C., Northampton, MA, for Defendants.

### ORDER ON DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT

BOAL, United States Magistrate Judge.

Plaintiffs Kevin M. Wenzel and Melissa S. Wenzel (the "Wenzels") filed this action challenging defendant Wells Fargo's[1] right to foreclose on their home located at 106 Surrey Road, Springfield, Massachusetts (the "Property"). The Wenzels claim, among other things, that defendant Sand Canyon Corporation's assignment of a mortgage on the Property to Wells Fargo was invalid and, as a result, Wells Fargo had no authority to foreclose on the Property.

The Wenzels originally filed this action in Massachusetts Superior Court and obtained a preliminary injunction prohibiting Wells Fargo from denying the Wenzels possession of the Property, from evicting the Wenzels from the Property, and from exercising any efforts designed toward gaining possession of the Property. Subsequent to removal to this Court, the Wenzels amended their complaint to, *inter alia,* bring claims against The Commerce Insurance Company ("Commerce"). All defendants have moved to dismiss the First Amended Complaint. For the following reasons, the Court grants the defendants' motions and dismisses the First Amended Complaint.

## I. PROCEDURAL BACKGROUND

### A. Housing Court

After the Wenzels defaulted on their mortgage, Wells Fargo foreclosed on Sep-

---

**1.** Wells Fargo's full name as it appears in the Complaint is Wells Fargo Bank, National Association as Trustee for Securitized Asset-Backed Receivables LLC 2006–OP1 Mortgage Pass–Through Certificates, Series 2006–OP1.

tember 27, 2010. (Ex. B to Wells Fargo Mem.).[2] The Foreclosure Deed was registered at the Hampden County Registry District of the Land Court at Document Number 186862 on January 10, 2011. (*Id.*). Wells Fargo subsequently initiated a summary process action against the Wenzels to evict them from the Property. (Ex. D to Wells Fargo Mem.).

On January 6, 2011, Kevin Wenzel[3] and Wells Fargo executed an Agreement for Judgment in the summary process action. (Docket No. 50). Pursuant to the Agreement for Judgment, the Wenzels were to vacate the Property by April 15, 2011. (Docket No. 50 at 7). In addition, the Agreement for Judgment provided that "Defendants [the Wenzels] are free to file a separate Superior Court action to challenge the Foreclosure Sale, & in turn file any other necessary motions in Housing Court, prior [sic] the agreed upon vacate date." (*Id.* at ¶ 3(a)).

On March 13, 2011, Kevin Wenzel filed a motion to extend the vacate date. (Housing Court Docket, Docket No. 54–1). On March 29, 2011, the Housing Court granted the motion to vacate the Property and extended the vacate date to June 30, 2011. (*Id.*). The March 29, 2011 order noted that Wells Fargo failed to appear at the hearing on the motion. (Docket No. 54–4).

On July 15, 2011, the Housing Court entered judgment in favor of Wells Fargo and against the Wenzels. (Docket No. 54–1). The Court issued an execution on the judgment on the same date. (*Id.*).

B. *Superior Court*

Prior to the issuance of the execution on the summary process action, on June 15, 2011, the Wenzels filed their original complaint in Massachusetts Superior Court. (State Court Record, Docket No. 13, at 2, 65–76). On July 18, 2011, the Wenzels filed a motion for a temporary restraining order, which was allowed the same day. (State Court Record at 2). On July 22, 2011, the Wenzels filed a motion for a preliminary injunction prohibiting Wells Fargo from evicting them from the Property. (State Court Record at 2, 46–47). Wells Fargo initially opposed the motion for a preliminary injunction but then withdrew its opposition. (State Court Record at 18–45). On July 27, 2011, the Superior Court issued a preliminary injunction enjoining Wells Fargo from:

> 1.) denying the Plaintiffs possession of 106 Surrey Road, Springfield, Massachusetts, 01118–1141 (the "premises"); and
>
> 2.) evicting the Plaintiffs from the premises or exercising any efforts designed toward gaining possession of the premises, including, but not limited to, enforcing, asserting, or relying upon any Executions On Judgment for Summary Process.

(the "Injunction"). (State Court Record at 16).

C. *Federal Court*

On August 22, 2011, Wells Fargo removed the action to this Court on the basis of diversity jurisdiction. (Docket No. 1). The parties consented to jurisdiction by a United States Magistrate Judge for all purposes on August 29, 2011. (Docket No. 9).

---

**2.** "Wells Fargo Mem. ___" refers to the October 13, 2011 Memorandum of Law in Support of Defendant, Wells Fargo Bank, National Association as Trustee for Securitized Asset–Backed Receivables LLC 2006–OP1 Mortgage Pass–Through Certificates, Series 2006–OP1's

Motion to Dismiss Plaintiffs' Amended Complaint (Docket No. 36).

**3.** Melissa Wenzel did not sign the Agreement for Judgment.

On September 2, 2011, Wells Fargo filed its first motion to dissolve the Injunction. (Docket No. 15). After a hearing and further briefing, the Court denied the motion to dissolve the Injunction on October 4, 2011. (Docket No. 31).

After the defendants moved to dismiss the action (Docket Nos. 10, 17), the Wenzels filed a First Amended Complaint on September 29, 2011. (Docket No. 26). While the original complaint named Option One Mortgage Corporation ("Option One") and Sand Canyon Corporation ("Sand Canyon") as defendants, the First Amended Complaint named Sand Canyon f/k/a Option One as a defendant. It also added factual allegations, amended the theories of liability against Wells Fargo and Sand Canyon, and added Commerce as a defendant. As a result of the filing of the First Amended Complaint, the defendants agreed that their original motions to dismiss were moot. (*See* Electronic Order dated October 3, 2011).

On September 30, 2011, Wells Fargo filed a motion to sever the claims against Commerce. (Docket No. 29). The Wenzels filed their opposition to the motion to sever on October 14, 2011. (Docket No. 39).

On October 13, 2011, Wells Fargo and Sand Canyon moved to dismiss the First Amended Complaint. (Docket Nos. 35, 37).[4] On October 18, 2011, Commerce moved to dismiss the First Amended Complaint. (Docket No. 41). The Wenzels filed their oppositions to Wells Fargo and Sand Canyon's motion to dismiss on October 27, 2011. (Docket Nos. 44–45). On October 31, 2011, they filed their opposition to Commerce's motion to dismiss.

(Docket No. 47). The Court heard oral argument on November 2, 2011.

After the hearing on the motions, the Court allowed the parties the opportunity to submit supplemental briefings on several issues. (*See* Electronic Order dated November 2, 2011). The Wenzels filed a supplemental brief on November 17, 2011. (Docket No. 52). On November 23, 2011, Wells Fargo and Sand Canyon filed their responses to the Wenzels' supplemental brief. (Docket Nos. 53 and 54).

On December 14, 2011, the Wenzels filed a Request for Judicial Notice, asking the Court to take judicial notice of certain documents in connection with the pending motions to dismiss. (Docket No. 63). At a hearing on December 15, 2011, the Court allowed the parties time to submit further briefing on the pending motions to dismiss, including the Wenzels' request that the Court take judicial notice of certain documents. (*See* Electronic Clerk's Notes dated December 15, 2011). On December 27, 2011, the Wenzels filed a supplemental brief. (Docket No. 68). On December 30, 2011, defendant Wells Fargo responded to the Wenzels' supplemental brief and objected to the Wenzels' request for judicial notice. (Docket Nos. 70–71).

### D. *Condemnation Proceedings*

On June 1, 2011, the Property was severely damaged as a result of a tornado that swept through Springfield, Massachusetts. (*See* Order dated October 4, 2011, Docket No. 31, at 6). On July 7, 2011, the City of Springfield issued a condemnation order for the Property to the Wenzels. (*Id.*). On August 10, 2011, the City of Springfield issued a condemnation order and order to vacate to Wells Fargo as the

---

4. Sand Canyon filed its motion to dismiss and accompanying memorandum on October 13, 2011. It inadvertently, however, filed the same papers it had filed back in September when it moved to dismiss the original complaint. On November 2, 2011, Sand Canyon filed a corrected motion to dismiss and memorandum of law. (Docket Nos. 48, 49).

owner of record of the Property. (*Id.*). The condemnation order was the subject of Wells Fargo's first motion to dissolve the Injunction.

On December 6, 2011, Wells Fargo filed a second emergency motion to dissolve the Injunction. (Docket No. 56). Wells Fargo reported that on December 2, 2011, the City of Springfield filed a petition to enforce its condemnation order. (*Id.* at 2). The Court held a hearing on Wells Fargo's second motion to dissolve the Injunction on December 15, 2011.[5]

On December 15, 2011, the Housing Court held a hearing regarding the City of Springfield's petition to enforce the condemnation order. The Housing Court ordered the Wenzels to vacate the Property by midnight on December 15, 2011; that Wells Fargo pay for hotel accommodations and provide a food stipend to the Wenzels; and set a further hearing for December 27, 2011. (Docket Nos. 65, 66). On December 27, 2011, the Housing Court continued its temporary order directing Wells Fargo to pay for alternative housing accommodations until the Housing Court makes a final decision regarding the application of *Brown v. Guerrier,* 390 Mass. 631, 457 N.E.2d 630 (1983), to the condemnation proceeding. (Docket No. 69).

## II. *FACTUAL BACKGROUND* [6]

### A. *The Allegations Against Wells Fargo And Sand Canyon*

On May 31, 2005, the Wenzels obtained a loan from Option One and executed a mortgage on the Property in favor of Op-

tion One (the "Mortgage"). (First Amended Complaint ("Complaint"), ¶ 6).

Effective April 30, 2008, H & R Block, Inc., as the parent company of Option One, sold Option One's mortgage loan servicing business to American Home Mortgage Servicing, Inc. ("AHMSI"). (Complaint, ¶ 7). Pursuant to the sale agreement, Option One changed its name to Sand Canyon. (Complaint, ¶ 7). AHMSI services mortgages for Wells Fargo and was and continues to be the mortgage servicer for the Property. (Complaint, ¶ 7).

As of April 30, 2008, Sand Canyon was no longer engaged in the servicing of residential mortgage loans and had no servicing rights. (Complaint, ¶ 9). As of April 30, 2008, Sand Canyon did not own any residential real estate mortgages. (Complaint, ¶ 10). Indeed, in a proceeding in the United States Bankruptcy Court for the Eastern District of Louisiana (*In re Ron Wilson Sr. and LaRhonda Wilson,* Case No. 07–11862), Dale M. Sugimoto, President of Sand Canyon, declared by affidavit dated March 18, 2009, that "Sand Canyon ... does not own any residential real estate mortgages," and that "Sand Canyon's present business involves dealing with litigation claims, including title issues or litigation relating to servicing prior to the sale of [Option One's] servicing rights to [AHMSI]." (Complaint, ¶ 47).

On or about April 20, 2010, Sand Canyon executed an assignment of the Mortgage to Wells Fargo. (Complaint, ¶ 11; Assignment, attached as Ex. A to Wells Fargo Mem.).[7] On September 27, 2010, Wells

---

**5.** Because the Court is dismissing all of the Wenzels' claims and dissolving the Injunction, that motion is now moot.

**6.** Because this case is presently before the Court on a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the First Amended Complaint

and drawing all reasonable inferences in the plaintiffs' favor. *See Morales–Tañon v. Puerto Rico Electric Power Authority,* 524 F.3d 15, 17 (1st Cir.2008).

**7.** In ruling on the motion to dismiss, the Court may consider the exhibits attached to Wells Fargo's memorandum of law as well as

Fargo foreclosed on the Wenzels' Property. (Foreclosure Deed, attached as Exhibit B to Wells Fargo Mem.). Wells Fargo purchased the Property at the foreclosure sale. (*Id.*).

### B. *The Allegations Against Commerce*

Effective May 27, 2011, the Wenzels obtained a homeowner's insurance policy from defendant Commerce. (Complaint, ¶ 20). The policy was in effect until May 27, 2012 and provided coverage for loss occasioned by wind and tornadoes. (Complaint, ¶ 20). On June 1, 2011, the Property was damaged by a tornado. (Complaint, ¶ 21). The Wenzels paid all premiums due under the policy and the policy was in effect at the time of the damage. (Complaint, ¶ 20).

On June 7, 2011, Commerce sent an adjuster to the Property who calculated a repair estimate of $38,810.88. (Complaint, ¶ 22). The Wenzels obtained an independent repair estimate of $149,500. (Complaint, ¶ 23).

Commerce's adjuster attributed a structural lean on the Property to a pre-existing condition. (Complaint, ¶ 24). The Property was inspected by Commerce in 2005 and Commerce did not make any observations of structural leans at that time. (Complaint, ¶ 25).

On August 24, 2011, Commerce denied the Wenzels' claim by offering only $5,000 to $7,000 for the Wenzels' personal belongings. (Complaint, ¶ 65). The Wenzels assert that Commerce's denial was based, in part, upon Wells Fargo's analysis, upon the mistaken legal conclusion that the Injunction would be automatically dissolved upon removal of this case to federal court, upon the theory that the Wenzels did not hold title to the Property at the time of the loss, and upon the unsupported accusation that the Wenzels made intentional misrepresentations to Commerce. (Complaint, ¶¶ 66–68).

### C. *The First Amended Complaint*

The First Amended Complaint contains seven counts. Count I seeks a declaratory judgment against Sand Canyon that the assignment of the Mortgage to Wells Fargo was invalid because Sand Canyon did not own the Mortgage and could not have assigned it to Wells Fargo. (Complaint, ¶¶ 26–28). Count II seeks a declaratory judgment that Wells Fargo did not have the authority to foreclose on the Property because it did not hold physical possession of the original promissory note associated with the Mortgage and did not comply with the statutory dictates of Massachusetts General Laws Chapters 244 and

the Agreement for Judgment filed at Docket No. 50, without converting the motion to a motion for summary judgment, because the exhibits are incorporated by reference in the Complaint and/or are matters of which the Court may take judicial notice. The Court may also consider the exhibits attached to Sand Canyon's and the Wenzels' briefs concerning the summary process action because they involve matters of which the court may take judicial notice. *See Nollet v. Justices of the Trial Court of Mass.*, 83 F.Supp.2d 204, 208 (D.Mass.2000) *aff'd*, 248 F.3d 1127 (1st Cir.2000) (in considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents at-

tached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken); *Boateng v. Inter-American Univ., Inc.*, 210 F.3d 56, 60 (1st Cir.2000) (court may consider documents from prior state court proceedings in deciding motion to dismiss as public records of which the court can take judicial notice).

The Court, however, will not consider Exhibits A to C to the Wenzels' request for judicial notice. (Docket No. 63). Those documents are irrelevant to this case as they pertain to "robosigning." The First Amended Complaint contains no allegations pertaining to "robo-signing."

186A. Therefore, Wells Fargo had no authority to initiate a summary process action to evict the Wenzels from the Property. (Complaint, ¶¶ 29–36). Count III (against Wells Fargo) seeks to quiet title in the name of the Wenzels pursuant to M.G.L. c. 240, § 6. (Complaint, ¶¶ 37–42). Count IV alleges fraudulent misrepresentation against Sand Canyon on the grounds that Sand Canyon falsely represented that it had the power to assign the mortgage with the intention of divesting the Wenzels of their rights to the Property. (Complaint, ¶¶ 43–51). Count V alleges that Wells Fargo negligently continued the foreclosure and eviction process without performing any due diligence into the validity of the mortgage it had been assigned by Sand Canyon. (Complaint, ¶¶ 52–57). Count VI alleges that Commerce denied the Wenzels' claim on their homeowners' insurance policy in bad faith. (Complaint, ¶¶ 58–75). Finally, in Count VII, the Wenzels allege that Commerce's actions caused plaintiff Kevin Wenzel emotional distress. (Complaint, ¶ 76–77).

## III. *ANALYSIS*

### A. *Commerce's Motion To Dismiss*

Commerce moves to dismiss the claims against it under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Commerce argues that because it is a citizen of Massachusetts and the plaintiffs are also citizens of Massachusetts, complete diversity between the parties is lacking. (Commerce Mem. at 2–4).[8] Commerce also moves to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Commerce argues that even assuming that the Court could exercise supplemental jurisdiction over the claims against Commerce, those claims fail as a matter of law. (Commerce Mem. at 3–6). The Court finds that the addition of Commerce as a defendant in this action destroyed complete diversity in this case. Nevertheless, the Court will dismiss Commerce from the action so as to preserve diversity jurisdiction over the remaining defendants and claims.

### 1. *Standard Of Review*

Federal courts are courts of limited jurisdiction. *Picciotto v. Continental Cas. Co.*, 512 F.3d 9, 17 (1st Cir.2008). "The objection that a federal court lacks subject-matter jurisdiction ... may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). "[F]ederal courts have an omnipresent duty to take notice of jurisdictional defects, on their own initiative if necessary." *Whitfield v. Municipality of Fajardo*, 564 F.3d 40, 44 (1st Cir.2009) (citation omitted). Ordinarily, subject matter jurisdiction should be examined as a threshold matter and if found lacking the case should be dismissed without entertaining the merits of the plaintiffs' complaint. *Bolduc v. United States*, 402 F.3d 50, 55 (1st Cir.2005).

This case was removed to this Court on the basis of diversity jurisdiction.[9] (Docket No. 1 at ¶ 4). "[A]ny civil action

---

**8.** "Commerce Mem. ___" refers to Defendant Commerce's Memorandum in Support of its Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) & (6) (Docket No. 42).

**9.** As the Wenzels have brought only state law claims in this action, there is no basis for federal question jurisdiction. The Wenzels' claims pursuant to the Declaratory Judgment Act, 22 U.S.C. § 2201, as contained in Counts I and II do not create an independent basis for subject matter jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Title 28, United States Code, Section 1332 grants federal courts original jurisdiction over actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States ..." 28 U.S.C. § 1332(a)(1).

■ A federal court has subject matter jurisdiction under 28 U.S.C. § 1332 only when complete diversity exists between the parties. 28 U.S.C. § 1332(a)(1); *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 673 (1st Cir.1994). "A business organized as a corporation, for diversity jurisdiction purposes, is 'deemed to be a citizen of any State by which it has been incorporated' and, since 1958, also 'of the State where it has its principal place of business.'" *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006) (citing 28 U.S.C. § 1332(c)(1)). For diversity purposes, a national bank is a citizen of the State in which its main office, as set forth in its articles of association, is located. *Id.* at 307, 126 S.Ct. 941.

■ Where, as here, a plaintiff introduces a non-diverse defendant to an action by amending the complaint under Rule 15(a), the new party destroys the federal court's subject matter jurisdiction. *Am. Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP*, 362 F.3d 136, 140

(1st Cir.2004). If the non-diverse party is dispensable, then a court may preserve diversity jurisdiction by dismissing the non-diverse party. *Gorfinkle v. U.S. Airways*, 431 F.3d 19, 22 (1st Cir.2005). In taking this step, the Court "should carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation." *Id.* (citation omitted).

### 2. The Addition Of Commerce As A Defendant Defeated Federal Subject Matter Jurisdiction

There was complete diversity between the parties when the case was removed to this Court. The Wenzels are citizens of Massachusetts. (Complaint, ¶ 2). Defendant Wells Fargo is a citizen of South Dakota.[10] (Docket No. 1 at ¶ 5). Sand Canyon is a citizen of California. (Complaint, ¶¶ 3–4). After removal, however, the Wenzels amended their Complaint to add Commerce as a defendant. Commerce is a Massachusetts citizen. (Complaint, ¶ 5). Accordingly, the addition of Commerce as a defendant destroyed the complete diversity between the parties and destroyed the Court's original subject matter jurisdiction over the action.

### 3. The Court Will Dismiss Commerce From The Action And Retain Jurisdiction Over The Remaining Defendants

■ The next question is whether Commerce may be dismissed from the action and the action proceed against the other defendants. That question is answered by determining whether Commerce is an in-

---

**10.** In the Notice of Removal, Wells Fargo avers that it is a "citizen of South Dakota having its main office, as designated in its articles of association, in Sioux Falls, South Dakota." (Docket No. 1 at ¶ 5). In the First Amended Complaint, the Wenzels allege that

Wells Fargo "is a securitized trust with an address of ... San Francisco, CA ... or Santa Ana, CA ..." (Complaint, ¶ 4). In any event, there is diversity between Wells Fargo and the Wenzels because the Wenzels are citizens of Massachusetts.

dispensable party to the action. If not, the action may proceed against the other defendants without Commerce; if so, it may not in federal court. *See Casas Office Machines,* 42 F.3d at 675.

Under Rule 21 of the Federal Rules of Civil Procedure, a non-diverse party that is not indispensable may be dismissed from the action so as to preserve diversity jurisdiction. Fed.R.Civ.P. 21;[11] *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 832, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). Rule 19 of the Federal Rules of Civil Procedure governs whether a party is dispensable or indispensable.

Rule 19 contemplates a two-step inquiry. The first step is to determine whether a party is "necessary" to the action, in the sense that such party should be joined if feasible. Fed.R.Civ.P. 19(a); *Pujol v. Shearson/American Express, Inc.,* 877 F.2d 132, 134 (1st Cir.1989). A party is "necessary" if

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a)(1).

"If the person is a 'necessary' party (*i.e.,* fits the definition of 19(a)), but joinder is not feasible, the court must take step two." *Pujol,* 877 F.2d at 134. "It must decide, using four 'factors,' whether 'in equity and good conscience the action should proceed among the parties before it, or should be dismissed.'" *Id.* Rule 19(b) states that the factors to be considered for this second step are:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

The Court finds that Commerce is not a necessary or indispensable party in this action. The Court can afford complete relief as to the Wenzels, Wells Fargo and Sand Canyon in the absence of Commerce. This action arises out of Wells Fargo's foreclosure on the Wenzels' Property. The Wenzels allege that Wells Fargo had no authority to foreclose on the mortgage because the assignment of the mortgage from Sand Canyon to Wells Fargo was void. Accordingly, the Wenzels seek a declaratory judgment that they own the Property and also seek to quiet title pursuant to M.G.L. c. 240, § 6. The Wenzels also assert a claim of negligence against Wells

---

**11.** Rule 21 states:
Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.
Fed.R.Civ.P. 21.

Fargo and a claim of fraud against Sand Canyon.

The Wenzels' claims against Commerce, on the other hand, involve Commerce's denial of a claim on the Wenzels' homeowner's insurance policy. (Complaint, ¶¶ 58–75). The Wenzels claim that the denial of their claim was in bad faith, causing Mr. Wenzel emotional distress. (Complaint, ¶¶ 76–77). Whether Commerce's denial of the claim was in bad faith and/or caused the Wenzels emotional distress has absolutely no bearing on the Wenzels' claims against Wells Fargo and Sand Canyon. Accordingly, Commerce's presence is not necessary to afford complete relief among the Wenzels, Wells Fargo and Sand Canyon.

The only link between the claims is the Wenzels' allegations that Commerce's denial of the insurance claim was based primarily on the disputed title to the Property. (Docket No. 39 at 2). However, the determination of whether Commerce's denial of the Wenzels' claim was in bad faith does not necessarily depend on the resolution of this action. In addition, the Wenzels have not shown the possibility of harm to Commerce or the risk of multiple or inconsistent obligations. Accordingly, the Court finds that Commerce is not a necessary party. Because the Court finds that Commerce is not a necessary party under Rule 19(a), it need not determine whether it is an indispensable party under Rule 19(b). *See Pujol,* 877 F.2d at 135 (a party who fails to satisfy the Rule 19(a) test cannot be an indispensable party under Rule 19(b)).

The Wenzels argue that although the joinder of Commerce would appear to destroy diversity jurisdiction, Commerce could still be joined under the doctrine of supplemental jurisdiction. (Wenzel Opp. to Commerce Motion at 2–3).[12] This Court disagrees.

Title 28, United States Code, Section 1367(a) grants supplemental jurisdiction over related claims in "any civil action of which the district courts have original jurisdiction." 28 U.S.C. § 1367(a). Section 1332, in turn, defines the requirements for "original jurisdiction" in diversity cases. 28 U.S.C. § 1332; *see Picciotto,* 512 F.3d at 20. In *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005), the Supreme Court explained how these two jurisdictional provisions interact: "Incomplete diversity destroys original jurisdiction with respect to all claims, so there is nothing to which supplemental jurisdiction can adhere." *Id.* at 554, 125 S.Ct. 2611. Accordingly, "[i]n a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Id.* at 553, 125 S.Ct. 2611. As the First Circuit has explained:

> The Court in *Allapattah* dubbed this view of complete diversity the 'contamination theory' because the inclusion of a nondiverse party 'contaminates every other claim in the complaint, depriving the court of original jurisdiction over any of these claims.' The 'contamination theory' makes sense in the context of the complete diversity requirement, the Court said, because 'the presence of nondiverse parties on both sides of a lawsuit eliminates the justification for providing a federal forum.' Additionally, the 'contamination theory' prevents

---

**12.** "Wenzel Opp. to Commerce Motion ___" refers to the Opposition of Plaintiffs to Defendant Commerce's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) & (6) (Docket No. 47).

plaintiffs from creating diversity jurisdiction 'simply by omitting [the nondiverse party] from the original complaint and then waiting for [that party] to be joined under Rule 19.'

*Picciotto*, 512 F.3d at 21 (internal citations omitted).

As explained above, the addition of Commerce destroyed complete diversity because Commerce, like the Wenzels, is a citizen of Massachusetts. Incomplete diversity destroyed the Court's original jurisdiction over the entire action and so the Court could not exercise supplemental jurisdiction over the Wenzels' claims against Commerce. However, Commerce is not an indispensable party to this action. Accordingly, the Court will dismiss Counts VI and VII from the First Amended Complaint and accordingly dismiss Commerce from the action, but will retain jurisdiction over the remaining claims.[13]

### B. *Wells Fargo And Sand Canyon's Motions To Dismiss*

Wells Fargo and Sand Canyon have moved to dismiss all of the claims against them on various grounds. First, Sand Canyon and Wells Fargo argue that the Wenzels' claims for declaratory judgment (Counts I and II) and to quiet title (Count III) are barred by the doctrine of res judicata. (Sand Canyon Mem. at 5;[14] Wells Fargo Mem. at 6–9; *see also* Docket No. 18 at 7–11[15]). Second, Sand Canyon and Wells Fargo argue that the Wenzels have no standing to challenge the validity of the assignment of the mortgage. (Sand Canyon Mem. at 5–6; Wells Fargo Mem.

at 9–13). Third, Wells Fargo argues that it lawfully foreclosed pursuant to M.G.L. c. 244. (Wells Fargo Mem. at 13–14). Fourth, Wells Fargo argues that M.G.L. c. 186A does not apply to the Wenzels. (Wells Fargo Mem. at 14–15). Fifth, Wells Fargo argues that the Wenzels have no standing to seek quiet title. (Wells Fargo Mem. at 15–16). Sixth, Wells Fargo argues that it cannot be liable for negligence (Count V) because it does not owe a duty of care to the Wenzels and because the Wenzels' negligence claim is barred by the economic loss doctrine. (Wells Fargo Mem. at 16–18). Finally, Sand Canyon argues that the Wenzels have failed to allege sufficient facts to support their claim of fraudulent misrepresentation. (Sand Canyon Mem. at 6–7).

For the following reasons, this Court grants Sand Canyon and Wells Fargo's motions to dismiss. First, the Court finds that there is no actual controversy between the Wenzels and Sand Canyon regarding the assignment of the Mortgage and, indeed, the Wenzels have no standing to seek a declaration that the assignment was void. In addition, the Wenzels' claims regarding the lawfulness of the mortgage foreclosure are barred by the doctrine of res judicata. To the extent that the Wenzels seek a declaratory judgment against Wells Fargo that Wells Fargo did not comply with the requirements of M.G.L. c. 186A, that statute does not apply to the Wenzels. Also, the claim of negligence fails as a matter of law because Wells Fargo does not owe a duty to the Wenzels and because the economic loss doctrine

**13.** Because the Court is dismissing Commerce from this action, Wells Fargo's motion to sever the claims against Commerce (Docket No. 29) is moot.

**14.** "Sand Canyon Mem. ___" refers to the Memorandum in Support of Motion to Dismiss Amended Complaint of Defendant Sand

Canyon Corporation, f/k/a Option One Mortgage Corporation (Docket No. 49).

**15.** Sand Canyon's memorandum of law incorporates by reference portions of its memorandum in support of its motion to dismiss the original complaint.

bars such a claim. Finally, the Wenzels have failed to state their fraud claim with particularity and have not pled the required element of reliance at all.

### 1. Standard Of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Mass.*, 83 F.Supp.2d 204, 208 (D.Mass.2000), *aff'd*, 248 F.3d 1127 (1st Cir.2000). Consideration of other materials is generally forbidden unless the motion is properly converted into one for summary judgment. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir.2000). While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions. *Iqbal*, 129 S.Ct. at 1949.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.; see also Sanchez v. Pereira–Castillo*, 590 F.3d 31, 48 (1st Cir.2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'") (citations omitted). Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of liability. *Iqbal*, 129 S.Ct. at 1950.

### 2. The Wenzels' Claim For Declaratory Judgment Against Sand Canyon Does Not Present An Actual Controversy Pursuant To The Declaratory Judgment Act And The Wenzels Have No Standing To Seek A Declaration That The Assignment Was Void

In Count I of the Complaint, the Wenzels seek a declaratory judgment against Sand Canyon that its assignment of the Mortgage to Wells Fargo was invalid. The Court finds that such a claim against Sand Canyon does not present an actual controversy, and indeed, the Wenzels lack standing to bring this claim. Accordingly, Count I must be dismissed.

A case or controversy must exist between the actual parties to a lawsuit for a federal court to have jurisdiction under Article III of the U.S. Constitution. *Ferreira v. Dubois*, 963 F.Supp. 1244, 1261 (D.Mass.1996). Even where the parties have not addressed this issue, "a court has an obligation to inquire sua sponte into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting." *White v. Gittens*, 121 F.3d 803, 806 (1st Cir.1997). Whether a case presents an actual case or controversy under Article III of the Constitution is a jurisdictional

matter. *Duska v. Duska,* No. 08–303, 2008 WL 5331161, at *1 (D.R.I. Dec. 19, 2008).

 The Declaratory Judgment Act, 28 U.S.C. § 2201, allows a party to seek a declaration of his or her rights. *Ferreira,* 963 F.Supp. at 1261. However, "[i]t is fundamental that a court may only issue a declaratory judgment where there is an actual case or controversy within the meaning of Article III." *Id.* (citation omitted). "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interest." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

 Declaratory judgments are thus limited to actual controversies as distinguished from disputes which are hypothetical, abstract or moot. *Ferreira,* 963 F.Supp. at 1262 (citation omitted). "A declaratory judgment is generally moot where 'the question presented for decision seeks a judgment upon a matter which, even if the sought judgment were granted, could not have any practical effect upon the parties.'" *Id.* (quotation omitted).

Here, there is no actual controversy as to Sand Canyon. Sand Canyon no longer holds the Mortgage. Sand Canyon did not foreclose on the Property and it does not assert any rights with respect to the Property or the Mortgage. The Wenzels were not parties to the mortgage assignment at issue here. A declaration *against Sand Canyon* (as opposed to Wells Fargo) that the assignment to Wells Fargo was invalid would have no practical effect upon the Wenzels. Accordingly, the Court finds that there is no actual controversy as between the Wenzels and Sand Canyon with respect to Count I of the Complaint.

 In addition, "[s]tanding is a threshold issue, determining whether the court has the power to hear the case, and whether the ... plaintiff is entitled to have the court decide the merits of the case." *Libertad v. Welch,* 53 F.3d 428, 436 (1st Cir.1995). In order to show standing, the plaintiffs must show that (1) they suffered some actual or threatened injury as a result of the challenged conduct; (2) the injury can fairly be traced to that conduct; and (3) the injury likely will be redressed by a favorable decision from the court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of other parties." *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

Here, the Wenzels have not established that they have a legally protected interest, as mortgagors, in the assignment of their Mortgage from Sand Canyon to Wells Fargo as they are not a party to the assignment nor are they granted any rights under it. In short, they are unrelated third parties with no interest in the assignment. *See Peterson v. GMAC Mortg., LLC,* No. 11–11115–RWZ, 2011 WL 5075613, at *2 (D.Mass. Oct. 25, 2011).

Courts have repeatedly held that mortgagors have no standing to dispute a mortgage assignment to which they are not a party. *See, e.g., Fryzel v. Mortg. Elec. Registration Sys., Inc.,* No. CA 10–352 M, 2011 U.S. Dist. LEXIS 95114, at *41 (D.R.I. June 10, 2011) ("[F]or over a century, state and federal courts around the country [have held] that a litigant who is not a party to an assignment lacks standing to challenge that assignment ... [this] principle ... is well established ..."); *Livonia Prop. Holdings, LLC v. 12840–12976 Farmington Road Holdings, LLC,* 717 F.Supp.2d 724, 735 (E.D.Mich.2010) aff'd, 399 Fed.Appx. 97, 102 (6th Cir.2010) (bor-

rower, as non-party to the assignment documents it was challenging, lacked standing under Michigan law to attack them).

The Wenzels argue in response that all of the cases against their position involve an entity—MERS—that is not present in the instant case. (Docket No. 68 at 4). This argument is both factually and legally incorrect. First, some of the cases that have found that plaintiffs lack standing involve entities other than MERS. *See, e.g., Juarez v. U.S. Bank Nat'l Ass'n,* No. 11–10318–DJC, 2011 WL 5330465, at \*4 (D.Mass. Nov. 4, 2011). Second, the cases involving MERS do not depend on their applicability to this case on an identity of the parties. Rather, those cases turn on the fact that the mortgagor was not a party to the assignment in question and had no rights under it.

■ Accordingly, the Court finds that the Wenzels have no standing to seek a declaration that the assignment was invalid and the Court dismisses Count I of the First Amended Complaint.[16]

### 3. Principles Of Res Judicata Bar The Wenzels From Bringing Their Claims Challenging The Validity Of The Foreclosure

■ Wells Fargo argues that the Wenzels' claims in Counts II and III are barred by the doctrine of res judicata. They argue that the determination of title was a key issue in the summary process action and having lost in that action, the Wenzels may not relitigate the claim now. This Court agrees.

■ A federal court sitting in diversity looks to state law in deciding the res judicata effect of a state court judgment. *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.,* 547 F.3d 48, 51 (1st Cir.2008)

16. The Court finds that the question of whether the Wenzels have standing to challenge the assignment is different from the question of whether they have standing to challenge the foreclosure on the basis that Wells Fargo did not properly hold the mortgage at the time of the foreclosure. The Massachusetts Supreme Judicial Court ("SJC") recently held that in order to properly foreclose under Massachusetts law, the foreclosing party must properly own the mortgage at issue. *U.S. Bank Nat'l Ass'n v. Ibanez,* 458 Mass. 637, 647, 941 N.E.2d 40 (2011). Judges in this District disagree as to whether *Ibanez* gives Massachusetts mortgagors standing to challenge a foreclosure on the basis of defects in an assignment to which they are not a party. At least one district court case suggests that *Ibanez* provides such standing. *Rosa v. Mortg. Electronic Sys., Inc.,* 821 F.Supp.2d 423, 429 n. 5, 2011 WL 5223349, at \*3 n. 5 (D.Mass. Sept. 29, 2011) ("Plaintiffs appear to have standing under [*Ibanez* ], because the allegations [regarding assignment validity], if proven, would render the foreclosure sale void, under Massachusetts law."). Other cases have declined to take this approach. *See, e.g., In re Correia,* 452 B.R. 319, 324 (1st Cir. BAP June 30, 2011) (affirming lower court's find-

ing that non-party to mortgage assignment lacked standing to challenge the validity of the assignment); *Peterson,* 2011 WL 5075613 at \*3 ("I do not read *Ibanez* to provide an independent basis for mortgagors to collaterally contest previously executed mortgage assignments to which they are not a party and that do not grant them any interests or rights"); *Kiah v. Aurora Loan Servs., LLC,* No. 10–40161–FDS, 2011 WL 841282, at \*6 (D.Mass. Mar. 4, 2011) (stating "difficult to see why plaintiff has standing to assert [challenge to mortgage assignment]").

In any event, the Court decides that it need not reach this issue because it finds that the Wenzels' claims against Wells Fargo regarding the validity of the foreclosure are barred by the doctrine of res judicata. Although a federal court must ordinarily decide the jurisdictional issues first, if good reasons counsel otherwise, the court may proceed directly to the 12(b)(6) motion. *Kelly v. Deutsche Bank Nat'l Trust Co.,* 789 F.Supp.2d 262, 265 n. 5 (D.Mass.2011). A good reason is presented where, as here, the 12(b)(1) motion is not dispositive of the case. *Id.* (citing *Ne. Erectors Ass'n of the BTEA v. Sec'y of Labor,* 62 F.3d 37, 39 n. 1 (1st Cir.1995)).

(citation omitted). "Res judicata 'makes a valid final judgment conclusive on the parties ... and prevents relitigation of all matters that were or could have been adjudicated in the action.'" *Id.* at 52 (quotation omitted). Under Massachusetts law, res judicata requires the presence of three elements: "(1) the identity or privity of the parties to the present and prior actions; (2) the identity of the cause of action; and (3) prior final judgment on the merits." *Bui v. Ma,* 62 Mass.App.Ct. 553, 561, 818 N.E.2d 572 (2004) (citations omitted). A plaintiff is precluded from litigating not only those claims that were actually decided but those that could have been brought in that action. *Id.*

There is no dispute that the first element, identity of the parties, is present here. The Wenzels and Wells Fargo are parties in this case and were parties to the summary process action. Although the Wenzels dispute the remaining two elements, the Court finds that those elements are also present.

▇▇▇▇ First, the Court finds that there is an identity in the cause of action in both cases. "Massachusetts deems causes of action identical for claim preclusion purposes if they 'grow out of the same transaction, act, or agreement, and seek redress for the same wrong.'" *Andrew Robinson Int'l, Inc.,* 547 F.3d at 52 (quoting *Brunson v. Wall,* 405 Mass. 446, 541 N.E.2d 338 (1989) (internal modifications omitted)). Accordingly, "[a] court may bar a claim under res judicata principles when title to property was at issue between the same parties (or those in privity with them) in a prior action, and is sought to be litigated in the current proceeding." *Solomont v. Howe Real Estate Advisors, LLC,* No. 11 MISC 448092, 2011 WL 4483960, at *8 (Mass.Land Ct. Sept. 28, 2011) (citing *Sheehan Construction Co. v. Dudley,* 299 Mass. 51, 54, 12 N.E.2d 182 (1937) (finding title issues involved in a prior summary process proceeding, between parties in privity with parties in the second case, were barred under res judicata)).

▇▇▇▇ "Challenging a plaintiff's entitlement to possession has long been considered a valid defense to a summary process action for eviction where the property was purchased at a foreclosure sale." *Bank of New York v. KC Bailey,* 460 Mass. 327, 333, 951 N.E.2d 331 (2011) (citation omitted).[17] "The purpose of summary process is to enable the holder of legal title to gain possession of premises wrongfully withheld. Right to possession must be shown and legal title may be put in issue ... Legal title is established in summary process by proof that the title was acquired strictly according to the power of sale provided in the mortgage; and that alone is subject to challenge." *Id.* (citations omitted). As one court has stated:

> ... a mortgagor owner, faced with eviction in a summary process action commenced following mortgage foreclosure, has the full opportunity needed to raise, as a defense in the summary process case, challenges to the mortgage foreclo-

---

**17.** The Wenzels argue that the Court cannot rely on *Bank of New York v. Bailey,* 460 Mass. 327, 951 N.E.2d 331 (2011), because that case was decided after the Housing Court issued the Execution on Judgment for Summary Process. (Wenzels Opp. at 4–5). However, that case did not decide a new issue of law; it simply clarified the law. For example, in 1937, the SJC held that a judgment in favor of a purchaser in summary process action against a mortgagor was res judicata with respect to the mortgagor's action challenging the validity of the foreclosure. *Sheehan v. Dudley,* 299 Mass. 51, 54, 12 N.E.2d 182 (1937). Indeed, *Bailey* relies on *Sheehan. See Bailey,* 460 Mass. at 333, 951 N.E.2d 331. As the *Solomont* case stated, "*Sheehan* continues to be governing law." *Solomont,* 2011 WL 4483960 at *10.

sure, and to the validity of the title which the foreclosure sale and deed yielded. Deferral of these questions, holding them in reserve for another day in another court, is not an acceptable tactic for the mortgagor to employ, at least without some clear understanding on the part of all the summary process parties that reserves until later the question of the title following the foreclosure. When the foreclosing lender comes into the Housing or District Court to recover possession, and bases its right on a title derived from a mortgage foreclosure recently conducted against the mortgagor, the mortgagor, who has knowledge of legal grounds why that foreclosure did not establish title in the grantee under the foreclosure deed, is bound to raise and pursue those legal grounds then, in the summary process forum. The failure to do so will preclude later litigation on these questions, which are fundamental elements of the case for posses-sion [sic].

*Solomont*, 2011 WL 4483960 at *11.[18]

Accordingly, by entering a judgment for Wells Fargo in the summary process action, the Housing Court necessarily determined that Wells Fargo had properly foreclosed and was entitled to possession of the Property. Having had the opportunity to dispute the validity of Wells Fargo's authority to foreclose in the summary pro-

cess action, the Wenzels are now barred from relitigating those claims.[19]

The Court also finds that there was a final judgment on the merits in the summary process action. The Wenzels argue that the summary process action did not result in a final judgment on the merits, as required for res judicata, because the summary process action was resolved by an Agreement for Judgment. (Wenzels' Supp. Br. at 1–2).[20] The Court disagrees.

■ An agreement for judgment "conclusively determines the rights of the parties as to all matters within its scope." *Kelton Corp. v. County of Worcester*, 426 Mass. 355, 359, 688 N.E.2d 941 (1997) (citations omitted). The Wenzels have not alleged that the consent judgment was procured by fraud or mistake. Accordingly, the Agreement for Judgment in the summary process action constitutes a final judgment on the merits. *See, e.g., Ishaq v. Wachovia Mortg., FSB*, No. 09–11422–RGS, 2010 WL 1380386, at *2–3 (D.Mass. Apr. 2, 2010) (finding that consent judgment entered in summary process action barred plaintiff's claims based upon wrongful foreclosure).

There is one wrinkle, however. The Agreement for Judgment contained a clause providing that "Defendants [the Wenzels] are free to file a separate Superior Court action to challenge the Foreclosure Sale, & in turn file any other neces-

**18.** Although the Court is not bound by a decision of the Massachusetts Land Court on Massachusetts state law, the court finds the reasoning of the Land Court in this case persuasive.

**19.** The Wenzels argue that the judgment in the Housing Court cannot operate as res judicata because the Housing Court does not have jurisdiction to quiet title. (Docket No. 68 at 2–3). The Wenzels point to a December 19, 2011 letter from Hon. Dina E. Fein, First Justice of the Housing Court Department of the Trial Court, to Hon. Steven D. Pierce,

Chief Justice of the Housing Court Department. (Docket No. 68–1). First, the Court questions whether it may consider that letter in ruling on the motions to dismiss. In any event, that letter is of dubious application to this case as it involves a completely unrelated Housing Court matter.

**20.** "Wenzel Supp. Br. ___" refers to the Plaintiffs' Supplemental Post–Hearing Brief in Opposition to Motions to Dismiss by Defendants, Wells Fargo and Sand Canyon (Docket No. 52).

sary motions in Housing Court, *prior (sic) the agreed upon vacate date.*" (Agreement for Judgment (Docket No. 50) at ¶ 3(a)) (emphasis added). Elsewhere, the Agreement for Judgment provided for an agreed upon vacate date of April 15, 2011. (*Id.* at ¶ 7). The summary process action's docket reflects that on March 17, 2011, Kevin Wenzel filed a motion to extend the vacate date. The Housing Court granted that motion on March 29, 2011. The order reflects that the Housing Court granted the motion "[a]fter hearing at which only the defendants (moving parties) appeared and the plaintiff failed to appear after notice ..." (Docket No. 54–4). The Housing Court extended the vacate date to June 30, 2011. (*Id.*). The Wenzels filed this action in Superior Court on June 15, 2011. (State Court Record at 2). Accordingly, it appears that the Wenzels expressly reserved their right to bring this action so long as they did so before the "agreed upon vacate date." The question becomes whether their filing of this action on June 15, 2011 is timely in light of the Housing Court's extension of the vacate date. The Court holds that it is not.

 "A consent judgment is essentially a settlement agreement that is entered as a judgment." *Thibbitts v. Crowley*, 405 Mass. 222, 226, 539 N.E.2d 1035 (1989). Accordingly, the Housing Court did not have authority to modify the terms of the Agreement for Judgment without Wells Fargo's consent. As the Supreme Judicial Court has explained:

> We are aware of no sound theory upon which it can be held that the court has jurisdiction to modify the terms of a valid existing contract which arose solely through the voluntary act of the parties. And when ... the plaintiff made a free, calculated and deliberate choice to sub-

mit to an agreed upon decree rather than seek a more favorable litigated judgment, his burden under Rule 60(b) is perhaps even more formidable that had he litigated and lost. Altering the material terms of such an agreement at the behest of one party, without the consent of the other, does violence to the second party's expectations and to the very concept of judgment by consent. . . .

> A court is powerless to enlarge or contract the dimensions of a true consent decree except upon (i) the parties' further agreement or (ii) litigation of newly-emergent issues.

*Thibbitts*, 405 Mass. at 226–227, 539 N.E.2d 1035 (internal citations, quotations and modifications omitted). Here, a hearing on the motion, at which Wells Fargo was absent, is not an adequate substitute for agreement or litigation. Accordingly, the Wenzels were required to file this action prior to April 15, 2011 in order to avoid the consequences of the Agreement for Judgment.

The Wenzels also argue that the Agreement for Judgment cannot be enforced because Melissa Wenzel did not sign it. However, the Housing Court entered judgment against both Melissa and Kevin Wenzel on July 15, 2011.[21] The plaintiffs have not alleged that the judgment was entered by mistake. In addition, they have not alleged that they have filed a motion for relief from judgment in the Housing Court. Indeed, the Docket shows no such activity.

The Wenzels argue that the summary process judgment should not have res judicata effect because declaratory judgments do not have preclusive effect and the judgment of possession entered in the sum-

---

**21.** For that reason, the Wenzels' argument that the Agreement for Judgment was not expressly approved by the Housing Court is also unavailing. (Wenzel Supp. Br. at 1–2).

mary process action is akin to a declaratory judgment action. (Wenzel Opp. at 5). This Court disagrees. The Wenzels have not cited any caselaw to support this proposition. Indeed, several cases have found claims barred by the doctrine of res judicata based on a prior summary process action judgment of possession. *See, e.g., Ishaq*, 2010 WL 1380386 at *3 ("The doctrine of claim preclusion applies to summary process actions."); *Sheehan*, 299 Mass. at 54, 12 N.E.2d 182 (judgment in favor of purchaser in summary process action against mortgagor was res judicata with respect to mortgagor's action challenging validity of foreclosure); *Solomont*, 2011 WL 4483960 at *11 (dismissing complaint seeking to quiet title on grounds of res judicata). Accordingly, the Wenzels' claims for declaratory judgment and to quiet title against Wells Fargo are barred by res judicata.

■■■■■ Finally, the Wenzels argue that the fact that they appeared *pro se* in the Housing Court matter entitles them to some measure of leniency in the application of res judicata principles. (Wenzel Opp. At 5). Again, the cases cited by the Wenzels do not support this proposition. The cases cited only hold that *pro se* filings may be read more liberally. They say nothing about the doctrine of res judi-

cata with respect to *pro se* litigants. Indeed, the important principles regarding finality of judgments would be severely hampered if cases were subject to relitigation solely on the basis that one of the parties was *pro se*. Accordingly, this Court finds that principles of res judicata bar the Wenzels' claims for declaratory judgment (Count II) and to quiet title (Count III) against Wells Fargo.[22]

### 4. Count II Of The Complaint Also Fails As A Matter of Law On The Merits

■■■ The Wenzels claim for declaratory judgment against Wells Fargo appears to be based, in part, on its allegation that Wells Fargo did not comply with the statutory mandates of M.G.L. c. 186A ("Chapter 186A") (Complaint, ¶ 35). Chapter 186A, however, provides for certain protections for tenants living in foreclosed properties. Section 2 of Chapter 186A provides that "a foreclosing owner shall not evict a *tenant* except for just cause or unless a binding purchase and sale agreement has been executed for a bona fide third party to purchase the housing accommodation from the foreclosing owner." M.G.L. c. 186A, § 2 (emphasis added). The term "tenant" is defined as "a person or a group of persons

---

22. The doctrine of res judicata also provides a reason to dismiss the declaratory judgment claim against Sand Canyon. A prior judgment is conclusive against the party to the action in which it was rendered or the party's privy. *Rhode Island Hosp. Trust Nat'l Bank v. The Ohio Cas. Ins. Co.*, 789 F.2d 74, 82 (1st Cir.1986). "One comprehensive definition of privies is such persons as are 'privies in estate—as donor and donee, lessor and lessee and joint tenants; or privies in blood—as heir and ancestor; or privies in representation—as executor and testator or administrator and intestate; or privies in law—where the law without the privity in blood or estate casts land upon another, as by escheat.'" *Brooks v. Sec. of the Commonwealth*, 257 Mass. 91,

94–95, 153 N.E. 322 (1926) (citation omitted). "Whether a party is in privity with another depends largely on the specific circumstances at issue; privity, in fact, has been described as any 'relationship that justifies binding someone not a party.'" *Rhode Island Hosp. Trust Nat'l Bank*, 789 F.2d at 82. An assignee is usually considered in privity with the assignor. *Id.*

The Court finds that Sand Canyon is in privity with Wells Fargo for purposes of res judicata. Option One originated the loan that is the subject of the Complaint and, after changing its name to Sand Canyon, assigned it to Wells Fargo. Accordingly, res judicata principles also bar the declaratory judgment claim against Sand Canyon.

who at the time of foreclosure is entitled to occupy a housing accommodation pursuant to a bona fide lease or tenancy or a tenancy at will." M.G.L. c. 186A, § 1. Chapter 186A provides that "a lease or tenancy shall not be considered bona fide unless: (1) the mortgagor, or the child, spouse or parent of the mortgagor under the contract, is not the tenant; and (2) the lease or tenancy was the result of an arms-length transaction." *Id.*

In addition, Section 3 provides that:

Within 30 days of foreclosure, the foreclosing owner shall post in a prominent location in the building in which the *rental housing unit* is located a written notice stating the names, addresses, telephone numbers and telephone contact information of the foreclosing owner, the building manager or other representative of the foreclosing owner responsible for the management of such building and stating the address to which rent and use and occupancy charges shall be sent.

M.G.L. c. 186A, § 3 (emphasis added).

To the extent that the Wenzels' claims are based on Chapter 186A they fail as a matter of law because Chapter 186A does not apply to the Wenzels. The Wenzels have not alleged that the Property was a rental housing unit as required under Section 3. Moreover, Chapter 186A does not apply to the Wenzels because they were not tenants within the meaning of Chapter 186A. The Wenzels are the alleged owners and mortgagors of the Property. (Complaint, ¶ 6). Accordingly, to the extent that the Wenzels' declaratory judgment count against Wells Fargo (Count II) is based on Chapter 186A, such claim must be dismissed.[23]

Finally, the Amended Complaint alleges that Wells Fargo never held

the Note in addition to the Mortgage at the time of the foreclosure sale and, as a result, had no legal authority to foreclose on the Property. (Complaint, ¶¶ 30–32). The theory upon which this allegation is based is incorrect as a matter of law. In Massachusetts, the foreclosing entity must hold the mortgage only, not both the mortgage and the note. *McKenna v. Wells Fargo Bank, N.A.,* No. 10–10417–JLT, 2011 WL 1100160, at *2 (D.Mass. Mar. 21, 2011) (noting that the mortgage holder is the proper foreclosing entity; M.G.L. c. 244, § 14 makes no mention of noteholders); *Valerio v. U.S. Bank, N.A.,* 716 F.Supp.2d 124, 128 (D.Mass.2010) ("The Massachusetts statute governing foreclosure sales is addressed to mortgagees, not note holders."). The mortgage and the note may be owned by different entities in which case, the mortgagee "holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage." *Ibanez,* 458 Mass. at 652, 941 N.E.2d 40. Accordingly, the Court rejects the plaintiffs' theory that Wells Fargo had no legal authority to foreclose because it did not hold the Note at the time of the foreclosure.

### 5. The Wenzels Cannot Assert A Claim Of Negligence Against Wells Fargo

In Count V of the Complaint, the Wenzels allege that Wells Fargo is liable for common law negligence because it negligently continued the foreclosure process against the Wenzels without performing any due diligence regarding whether it had the authority to foreclose. The Wenzels' negligence claim fails for two reasons.

First, Wells Fargo does not owe a duty of care to the Wenzels. To prevail on a claim of negligence, "a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that

**23.** The Wenzels have offered no serious opposition to this argument.

damage resulted, and that there was a causal relation between the breach of the duty and the damage." *Lev v. Beverly–Enters.–Mass., Inc.,* 457 Mass. 234, 239–40, 929 N.E.2d 303 (2010) (citation omitted). With respect to this claim, the Wenzels cannot meet the duty element because a lender owes no duty of care to a borrower.[24] *Corcoran v. Saxon Mortgage Servs., Inc.,* No. 09–11468–NMG, 2010 WL 2106179, at *4 (D.Mass. May 24, 2010).

■ Second, even if a duty existed, the claim is barred by the economic loss doctrine. Massachusetts law provides that, in negligence actions, "purely economic losses are unrecoverable ... in the absence of personal injury or property damage." *FMR Corp. v. Boston Edison Co.,* 415 Mass. 393, 395, 613 N.E.2d 902 (1993) (citation omitted). In this case, the Wenzels do not seek to recover for personal injury or property damage from Wells Fargo. Accordingly, their negligence claim fails.[25]

6. *The Wenzels Have Failed To Allege Sufficient Facts To Support Their Claim for Fraudulent Misrepresentation*

■ The Wenzels allege that Sand Canyon falsely represented to them and Wells Fargo that it had the authority to assign the Mortgage in order to divest the Wenzels of the Property. (Complaint, Count IV). Sand Canyon argues that the Wenzels allegations fail to state a claim for fraudulent misrepresentation and that the Wenzels have failed to plead fraud with particularity in violation of Rule 9. (Sand Canyon Mem. at 13–15). Sand Canyon is correct.

■ "To establish a claim of fraud under Massachusetts law, a plaintiff must prove that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that plaintiff reasonably relied upon the representation as true and acted upon it to his damage." *Taylor v. Am. Chemistry Council,* 576 F.3d 16, 31 (1st Cir.2009) (citation omitted). Rule 9(b) of the Federal Rules of Civil Procedure requires that the plaintiff plead fraud with particularity. Fed.R.Civ.P. 9(b); *see Hayduk v. Lanna,* 775 F.2d 441, 444 (1st Cir.1985) ("[M]ere allegations of fraud ... averments to conditions of mind, or referrals to plans or schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated.") (citing cases). In order to state a fraud claim with particularity pursuant to Rule 9(b), the Wenzels must "at a mini-

24. The Wenzels argue that this count survives simply because they used the term "negligence" in the complaint. (Wenzel Opp. at 8–9). This argument runs afoul of *Iqbal's* and *Twombly's* requirements. *Iqbal,* 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly,* 550 U.S. at 586, 127 S.Ct. 1955 (a plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence and may not just provide a speculation to a right to relief).

25. The Court recognizes that Massachusetts law provides for a tort of "wrongful foreclosure." *See Levin v. Reliance Co-Operative Bank,* 301 Mass. 101, 103, 16 N.E.2d 88 (1938). However, the Wenzels have not pled such a claim. In any event, the Court believes such a claim would be barred by the doctrine of res judicata as well. "Discrete theories of liability may constitute identical causes of action for claim preclusion purposes if they are based on the same nucleus of operative facts." *Andrew Robinson Int'l,* 547 F.3d at 52. A claim of wrongful disclosure in this case would no doubt be based on the same nucleus of operative fact as all other claims: that Sand Canyon did not hold the mortgage and could not have assigned it to Wells Fargo and, therefore, Wells Fargo did not have title and no authority to foreclose on the Property. Again, that issue should have been raised in the summary process action.

mum ... allege the time, place and contents of the alleged misrepresentation, as well as the identity of the person making them." *Kiah,* 2011 WL 841282 at *5; *see also Doyle v. Hasbro, Inc.,* 103 F.3d 186, 194 (1st Cir.1996). They must also plead reliance with particularity. *Aliberti v. GMAC Mortgage, LLC,* 779 F.Supp.2d 242, 248 (D.Mass.2011).

Here, the Wenzels have not pled the circumstances surrounding the alleged misrepresentation with particularity.[26] They have also not pled reliance at all. Accordingly, their claim of fraudulent misrepresentation fails as a matter of law.

## IV. *ORDER*

For the foregoing reasons, the defendants' motions to dismiss (Docket Nos. 35, 41, and 48) are GRANTED. Counts I, II, III, IV and V of the First Amended Complaint are dismissed with prejudice. Counts VI and VII of the First Amended Complaint are dismissed without prejudice. The Injunction is dissolved.

---

**26.** Plaintiffs state that "[t]his count pleads fraud with particularity as required by Fed. R.Civ.P. 9." (Complaint, ¶ 51). However, this statement alone is plainly insufficient in light of *Twombly* and *Iqbal.*